# United States District Court
# Northern District of Indiana

| ANTHONY CRENSHAW, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 3:09-CV-264 JVB |
| v. | ) | |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Anthony Crenshaw, a *pro se* prisoner, filed this habeas corpus petition raising three grounds to challenge his conviction and 28 year sentence by the Marion Superior Court under cause number 49G06-0010-CF-179175. He argues that the prosecutor withheld a police helicopter videotape in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); that his trial counsel was ineffective for not discovering that evidence; and that his appellate counsel was ineffective for not raising all the issues later presented during his post-conviction relief proceeding. The respondent argues that both ineffective assistance of counsel claims are procedurally defaulted and that the *Brady* claim is meritless because the ruling of the Court of Appeals of Indiana was not unreasonable. In his traverse, Crenshaw does not respond to the procedural default arguments; he attempts to present reasons that counsel were ineffective other than those originally presented in his petition; and he argues that the videotape should have been disclosed.

**A. Brady Claim**

After an armed robbery, Crenshaw led two police cars on a high speed chase which ended when he crashed into a parked car. Sgt. Morgan, who was in the first police car, testified:

> "As I prepared to exit out of the vehicle the fleeing vehicle put it in reverse and backed into my open door, pinning me against my car and the door itself, pinning me inside the car, or inside the doorway."

Trial Record at 117. Cpl.

> Copeland, who was in the second police car, corroborated that account:
>
> I have just pulled up, put my car in park, and I was looking. I had an unobstructed view out my passenger window, and I was looking right down the, or excuse me, the driver's side of the suspect vehicle. I was just putting my car into park. My canine partner was keyed on this area over here where my spotlight was, at which time I heard a revving engine, I saw the reverse lights come on on the suspect vehicle. The engine continued revving, by which time the suspect came backwards.
> . . .
> The suspect vehicle, like I said, I heard the revving engine, I saw the brake, or the reverse lights come on. The suspect vehicle came straight back and actually turned toward Sgt. Morgan's police vehicle with Sgt. Morgan still standing between his car and the open door.
> . . .
> The suspect vehicle came back, impacted Sgt. Morgan's vehicle probably right at the, the front left tire, if not just a little behind, right in that vicinity. The suspect vehicle made no attempts to stop. There was no brake lights that ever came on. The engine was still revving.
> . . .
> After the, the initial impact the suspect vehicle made no attempts to stop. There was no brake lights on. No brake lights came on. It continued on, struck Sgt. Morgan's driver's door. He then started to come, run backwards. The suspect vehicle continued on. I saw the vehicle strike Sgt. Morgan. Sgt. Morgan went to the ground backwards. As he was running backwards I saw him go to the ground.

Id. at 153–56.

None of those events were videotaped by the police helicopter because it had not yet arrived at the scene. Therefore nothing on the videotape contradicts or impeaches those segments of testimony. As correctly noted by the Court of Appeals of Indiana, "[t]he videotape only shows the very end of the police chase, <u>after</u> Crenshaw's vehicle struck a police officer. It was this act [backing into the police car and hitting Sgt. Morgan] that resulted in the attempted aggravated

2

battery conviction." *Crenshaw v. State*, 49A02-0803-PC-283, slip at 4 (Ind. Ct. App. December 11, 2008) (emphasis in original.)

In reviewing a habeas corpus petition, this court must presume the facts set forth by the state courts are correct. *See* 28 U.S.C. § 2254(e)(1). It is Crenshaw's burden to rebut this presumption of correctness with clear and convincing evidence. *Id.* Here, he has presented nothing to indicate that these facts are incorrect. Furthermore, because the state court addressed the *Brady* claim on the merits, habeas corpus relief may not be granted unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Again, Crenshaw has demonstrated neither.

A *Brady* claim has two prongs. First, "that the government failed to give [defendant] evidence favorable to his defense, that would tend to show his innocence or which could be used to impeach witnesses at trial." *Goudy v. Basinger*, 604 F.3d 394, 398-399 (7th Cir. 2010). Second, "that the evidence was material to an issue at trial; that had the evidence been disclosed to the jury at trial, there is a reasonable probability that the result would have been different." *Id.* at 399. Here, the Court of Appeals of Indiana reasonably found that the helicopter videotape was not material and that the verdict would not have been different if it had been shown during Crenshaw's trial.

Crenshaw's theory is "that he was shot in the back of the head and shoulder prior to the vehicle going in reverse." Petition at 4, ECF 1. He argues that the videotape is relevant because

3

it contradicts Cpl. Copeland's trial testimony about the events which occurred after Sgt. Morgan was struck by the fleeing vehicle. He believes that "the video supports Petitioner's claim that the only reason his vehicle had rolled towards Officer Morgan was because he was shot and could no longer control the vehicle." Id. at 5. The problem with this theory of the case is that Crenshaw has identified nothing in either the record or the helicopter videotape to support it.

> Cpl. Copeland testified:
>
> At that point the suspect vehicle was coming right for my vehicle. I then threw my car into drive in an attempt to get out of his way.
> . . .
> As I was pulling forward the suspect vehicle continued coming straight backwards at a high speed, struck me in the right rear quarter panel just behind my rear tire, which knocked me out into this area here. I then continued northbound on Barnes, made a left turn, which is referred to as a three point turnaround where you pull up, you stop, you back up, and then you go forward. That's your three point turnaround, those of you who aren't familiar with that. As I did that, when I was at this area here, this stage here, my three point turnaround, I heard a series of gunshots, rapid succession gunshots. I don't know what was going on. I didn't see anything. All I heard was the rapid succession of gunshots.
> . . .
> I then continued, completed my three point turnaround. When I got to this point here I had a view, unobstructed view southbound on Barnes. I saw the, the suspect vehicle backing southbound down Barnes, and I didn't see Sgt. Morgan anywhere.
> . . .
> The suspect vehicle continued backing down Barnes . . . and went up onto a sidewalk and came to rest at the sidewalk where there's a side yard with, there's a hill."

Trial Record at 156–58.

The videotape shows aerial photos as the helicopter searches to find them. Once located, the first images show Cpl. Copeland "completing a three point turn around . . . [and] Crenshaw coming to rest there." Post-Conviction Transcript at 87. Those images, as described while they were shown during the post-conviction hearing, are consistent the trial testimony about the final

4

moments of these events. As accurately explained by the Court of Appeals of Indiana, these images do not show when Sgt. Morgan was struck by Crenshaw's vehicle. Neither do they show Sgt. Morgan shooting at Crenshaw. They certainly do not show that Crenshaw had been shot before he drove his car into Sgt. Morgan.

At the post-conviction relief hearing, Crenshaw explained that, "[Cpl. Copeland] says the shots were fired during the three point turnaround, but the tape shows that it didn't happen that, as he said, as he was doing his three point turnaround." *Id.* at 59. It is unclear why Crenshaw believes that the videotape would have impeached Cpl. Copeland, because the videotape simply does not provide any evidence to contradict the testimony that Crenshaw hit Sgt. Morgan with his car before Sgt. Morgan shot him. Though the Court of Appeals of Indiana did suggest that "the video may have been used to impeach the police officers concerning [other] parts of their testimony," *Crenshaw v. State*, 49A02-0803-PC-283, slip at 4-5 (Ind. Ct. App. December 11, 2008), because they did not identify what testimony, it is unclear what they meant by that reference. At most, Crenshaw's arguement is that there is a minor discrepancy about exactly when – during Cpl. Copeland's turn around – the shots were fired. But as the state court reasonably concluded, any such minor inconsistencies were too trivial to undermine confidence in the verdict. Therefore the ruling of the Court of Appeals of Indiana was not unreasonable.

**B. Ineffective Assistance of Counsel**

Crenshaw raises two ineffective assistance of counsel claims. The respondent argues that both of them are procedurally defaulted because neither was presented to the Indiana Supreme

5

Court in a petition to transfer. In his traverse, Crenshaw does not address the argument that these claims are procedurally defaulted.

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. *Baldwin v. Reese*, 541 U.S. 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Id.* at 276. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. *Boerckel*, 526 U.S. at 845. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Ibid*.

*Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004) (parallel citations omitted). When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 853-54 (1999).

In his petition to transfer to the Indiana Supreme Court, Crenshaw alleged that his trial and appellate counsel were ineffective, but he did not provide any explanation as to how they were ineffective. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [the petitioner] must have identified the specific acts or omissions of counsel that form the basis for [the] claim of ineffective assistance." *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (quotation marks,

6

original brackets and citation omitted). Therefore all of his claims of ineffective assistance of counsel are procedurally defaulted.

**C. Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). When the district court has dismissed the petitioner's claim on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* Each is a threshold inquiry; thus, the Court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

As more fully explained in this opinion, nothing before the Court suggests that jurists of reason could debate the resolution of either the *Brady* issue or the procedural default ruling. Neither are there reasons indicating that they deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**D. Conclusion**

The petition for writ of habeas corpus is **DENIED** and a certificate of appealability is **DENIED**.

**SO ORDERED** on March 10, 2011.

s/Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge  
Hammond Division